UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON HARDISTER, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) CAUSE NO: 1:16-cv-672 |
| | ) |
| CITY OF INDIANAPOLIS | ) |
| INDIANAPOLIS FIRE DEPARTMENT | ) |
| AND INDIANAPOLIS | ) |
| METROPOLITAN | ) |
| POLICE DEPARTMENT | ) |
| | ) |
| DEFENDANTS. | ) |

March 24, 2016

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. Nature of the Case**

1. The plaintiff, Jason Hardister, who is African-American, has been a dedicated firefighter for the City of Indianapolis for the past ten years. He brings this action against his employer, City of Indianapolis (the "City"), Indianapolis Fire Department ("IFD"), and Indianapolis Metropolitan Police Department ("IMPD), (collectively "Defendants"), to remedy violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), *42 U.S.C. § 2000e et seq*, as amended, specifically by discriminating against him due to his race. Hardister alleges that the Defendants violated his rights

guaranteed by Title VII by engaging in discriminatory employment practices, including but not limited to providing training to a Caucasian employee with less seniority, demoting him based on fabricated allegations, permitting ongoing and pervasive racial harassment, and retaliating against him for complaining to his supervisors of the racial harassment and discrimination and for filing a charge of discrimination with the Equal Employment Opportunity Commission, ("EEOC"), which constitutes protected activity.

## II. Parties

2. Hardister is a resident of Marion County and remains an employee of Defendants.
3. Defendant, City of Indianapolis, is a governmental entity doing business in Indianapolis, Indiana, Marion County.
4. Defendants are an "employer" as that term is contemplated by *42 U.S.C. § 2000e*.

## III. Jurisdiction and Venue

5. This Court has jurisdiction over this action pursuant to *28 U.S.C. § 1331 and*
   1. *§ 1343(a)* and *42 U.S.C. § 2000e-5*, as amended.
6. Venue is proper pursuant to *28 U.S.C. § 1391(c)* as Defendants conduct business in this District.
7. At all times relevant to this action, Hardister was an "employee" as that term is defined by *42 U.S.C. § 2000e(f)*.

8. Hardister satisfied his obligation to exhaust administrative remedies by timely filing a charge of discrimination (Charge No. 470-2015-00481) with the EEOC, alleging discrimination and harassment on the basis of race and retaliation. Hardister received his Notice of Right to Sue from the EEOC and brings this original action within ninety (90) days of receipt thereof (Exhibit A).

9. All facts, events, and transactions giving rise to this lawsuit occurred within the geographic environs of the Southern District of Indiana; thus, venue is proper in this Court.

## IV. Factual Allegations

10. Hardister is an Indianapolis firefighter and an African-American.

11. Hardister has been employed by IFD for approximately eleven (11) years, hired on February 14, 2005.

12. On November 10, 2012, Hardister began working as a full-time Fire Analyst/Investigator in the Indianapolis Fire Investigation Unit ("FIU").

13. FIU is a joint unit under the command of both IFD and IMPD.

14. While racially offensive language and racially motivated conduct was prevalent throughout his employment, Hardister experienced blatant racial discrimination beginning in May of 2014.

15. On May 19, 2014, Captain Chris Schenk, who is Caucasian, stated that he would be attending the arson training academy (academy) instead of Hardister.

16. At that time, Hardister had the most unit seniority and should have attended the academy, according to IFD policy.

17. Captain Schenk also falsely reported to the unit supervisor that Hardister complained to the union about the decision to allow him to attend the academy over Hardister.

18. Hardister did complain to his unit supervisor about the appointment in person on May 19, 2014, and by e-mail on May 23, 2014.

19. Hardister's complaints were ignored and a month later, he was informed that the academy was full and Captain Schenk would be the only attendee from his unit.

20. On June 17, 2014, Hardister grieved the appointment of Captain Schenk to the academy, alleging the appointment was racially motivated and discriminatory.

21. On July 15, 2014, Hardister's grievance was denied for the second time, this time by Chief Ernest Malone.

22. During an in-person meeting with Hardister, Chief Malone stated that if Hardister dropped the grievance, he would insure that he would attend the next academy. Alternatively, if Hardister continued the grievance process, Chief Malone would again be the arbiter after his promotion to IFD Chief and that he would again deny his grievance.

23. Following his grievance, Hardister began receiving less desirable assignments and was denied more lucrative assignments.

24. On October 31, 2014, a series of events orchestrated by Captain Schenk, Chief Fred Pervine, and Chief Greg Gates confirmed Hardister's allegations of racial animus and retaliation.

25. Hardister was first sent on an assignment to investigate a fire. Hardister completed his investigation and submitted his report, concluding the fire was accidental.

26. Four days later, Hardister was ordered to return to the scene of the fire by Chief Gates and Captain Schenk. His orders were to process the scene with Unified Fire Investigator Terry King.

27. As a part of the processing, Hardister and King discovered a small amount of marijuana that was not present during Hardister's initial investigation.

28. When questioned, the property owner stated that he likely dropped it when removing personal items from the damaged property.

29. Hardister reported these developments to Detective Carter and Chief Gates.

30. On November 6, 2014, Detective James Albin phoned Hardister and ordered him to contact Sergeant Gregory Scott from the Violent Crimes Unit and explain his report from the fire.

31. During his conversation with Sergeant Scott, Hardister learned that Chief Gates reported that there was a significant marijuana growing operation at the location of the fire and that there was a secret grow room at the back of the property. Chief Gates never investigated or was present on the scene.

32. Hardister explained to Sergeant Scott that neither of these allegations was true and findings by him and King did not support these allegations. Hardister provided his report to Sergeant Scott.

33. Later that same day, Chief Gates ordered Hardister to provide an official report to him. Hardister asked Chief Gates about the misinformation concerning this

investigation and Chief Gates ignored the question and restated his command to submit a report to him and to copy Sergeant Scott.

34. Hardister provided an official report with his findings to Chief Gates on November 6, 2014, even though it was his day off, and Hardister was never paid for overtime.

35. On November 18, 2014, IFD informed Hardister that he was being removed from the Fire Investigation Unit, pending an investigation, due to his involvement in the marijuana growing operation that Hardister had learned Chief Gates, who was not present or who had not investigated the scene, had reported was at the location of the fire investigated by Hardister on October 31, 2014 and which never existed.

36. Hardister filed a Charge of Discrimination with the EEOC shortly thereafter, claiming racial discrimination and retaliation.

37. During the following months, Hardister was reassigned as an engineer, a demotion.

38. On February 25, 2015, Hardister learned that he was being investigated for criminal activity and IMPD policy violations. He was also informed that criminal charges would not be filed.

39. On March 16, 2015, Hardister met with Internal Affairs. During this meeting, Hardister learned that information essential to the investigation was not provided to Internal Affairs. Hardister provided the missing reports and photos to the investigator.

40. The Internal Affairs investigator stated to Hardister that "it appears you were set up" and that he should not have been ordered to return to the scene of the fire a second time.

41. On May 29, 2015, Hardister was officially removed from the Fire Investigation Unit according to a letter from Marion County Prosecutor's Office. This decision occurred after Internal Affairs concluded that Hardister did not violate any policies.

42. On October 28, 2015, Hardister met in person with Chief Malone. During this meeting, Hardister presented evidence to Chief Malone that previously was not included in the investigation.

43. Chief Malone stated that he never received the critical information presented to him by Hardister and that he would investigate the entire incident.

44. To date, no results have been presented to Hardister from Chief Malone and Hardister remains reassigned.

45. Defendants have a long well-documented history of racial harassment and incidents.

46. Hardister personally experienced repeated racial slurs and racial discrimination while employed by Defendant.

47. After Hardister filed the Charge of Discrimination, he was treated differently by his Unit Chief and coworkers.

48. Hardister's supervisor verbally abused him and treated him differently than other employees.

49. The reasons provided by Defendants to demote him and to prevent him from participating in necessary training were pretextual.

50. Hardister received positive performance reviews and his quality of work was never questioned.

51. Hardister complained to several members of management and his union about the race discrimination, harassment, and retaliation.

52. Defendant's actions were intentional, willful and in reckless disregard of Hardister's rights as protected by Federal law.

53. Hardister was and continues to be economically, physically, and emotionally harmed by Defendants' discriminatory and harassing actions.

### V. Count I:  Discrimination under Title VII

54. Hardister hereby incorporates paragraphs one (1) through fifty-four (54) of his Complaint herein.

55. Defendants violated Title VII by demoting Hardister, refusing to permit him to participate in training necessary for his advancement, and discriminating against him due to his race.

56. Defendants treated Hardister less favorably in the terms, privileges, and conditions of his employment than similarly-situated Caucasian coworkers.

57. Defendant's actions were intentional, willful, and/or undertaken in reckless disregard of Hardister's rights as protected by Title VII.

58. Hardister has suffered damages as a result of Defendant's unlawful actions.

### VI. Count II:  Retaliation under Title VII

59. Hardister hereby incorporates paragraphs one (1) through fifty-nine (59) of his Complaint herein.

60. Hardister's Charge of Discrimination with the EEOC, the grievance filed with his union, and complaints to members of Defendant's management constituted protected activity.

61. Similarly-situated employees who did not engage in protected activity were treated more favorably in the terms, privileges, and conditions of their employment.

62. Defendants unlawfully retaliated against Hardister because he engaged in protected activity.

63. Defendants acted with intent, malice, and or reckless disregard as to Hardister's legal rights under Title VII.

64. Hardister was harmed as a result of Defendant's conduct.

## Relief Requested

WHEREFORE, Plaintiff, Jason Hardister, requests that this Court find in his favor and provide him with the following relief:

A.   Enjoin Defendants from engaging in further violations of Title VII;

B.   Order Defendants to return Hardister to the Fire Investigation Unit with all commensurate compensation, benefits and seniority or payment of front pay in lieu thereof;

C.  Order Defendants to pay to Hardister wages, benefits, compensation, and all monetary loss suffered as a result of Defendant's wrongful and unlawful actions in an amount that will make him whole;

D.  Order Defendants to pay to Hardister liquidated damages;

E.  Order Defendants to pay to Hardister compensatory damages;

F.  Order Defendants to pay Hardister's costs and attorney fees incurred in litigating this action;

G.  Order Defendants to pay to Hardister pre- and post-judgment interest on all sums recoverable, and;

H.  Order Defendants to provide to Hardister any and all other legal and/or equitable relief that may be just and proper.

Respectfully submitted,

_____
/s/ Michael S. Dalrymple
Michael S. Dalrymple, Attorney at Law, (23539-53)
1847 Broad Ripple Avenue
Suite 1A
Indianapolis, Indiana 46220
(317) 614-7390
michaeld@dalrymple-law.com
Attorney for Plaintiff, Jason Hardister

**DEMAND FOR JURY TRIAL**

The Plaintiff, Jason Hardister, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

_____
/s/ Michael S. Dalrymple

Michael S. Dalrymple, Attorney at Law, (23539-53)

1847 Broad Ripple Avenue

Suite 1A

Indianapolis, Indiana 46220

(317) 614-7390

michaeld@dalrymple-law.com

Attorney for Plaintiff, Jason Hardister

## CERTIFICATE OF SERVICE

I certify that on the 24th day of March, 2016, I served the foregoing to the Defendant.

/s/ Michael Dalrymple
Michael Dalrymple, #23539-53